UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THOMAS JOSEPH PICONE,

                                Plaintiff,

                -vs-                                            13-CV-347-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                Defendant.

APPEARANCES:    LAW OFFICES OF KENNETH HILLER (KENNETH R. HILLER, ESQ., and JAYA ANN SHURTLIFF, ESQ., of Counsel), Amherst, New York, for Plaintiff

                      WILLIAM J. HOCHUL, JR., United States Attorney (MICHAEL S. CERRONE, Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

## INTRODUCTION

This matter has been transferred to the undersigned for all further proceedings, by order of United States District Judge William M. Skretny dated April 23, 2015 (Item 20).

Plaintiff Thomas Picone initiated this action on April 8, 2013, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under Title II and Title XVI of the Act, respectively. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 11, 12). For the following reasons, plaintiff's motion is denied, and the

Commissioner's motion is granted.

**BACKGROUND**

Plaintiff was born on February 23, 1957 (Tr. 146).[1] He filed applications for SSDI and SSI benefits on January 27, 2010, alleging disability due to depression and lung problems, with an onset date of December 18, 2009 (Tr. 146, 151). The applications were denied administratively on May 14, 2010 (Tr. 59-65). Plaintiff requested a hearing, which was held on July 25, 2011 before Administrative Law Judge ("ALJ") Roxanne Fuller (Tr. 28-50). Plaintiff appeared and testified at the hearing, and was represented by counsel. Dr. Jessie Duke, a Vocational Expert ("VE"), also appeared and testified.

On August 3, 2011, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 14-24). Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Titles II and XVI (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (identified by the ALJ as depression, adjustment disorder, personality disorder, and substance abuse disorder), while "severe" within the meaning of the Act and considered alone or in combination, did not meet or medically equal the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 62-63). Additionally, the ALJ found that plaintiff suffers from several non-severe impairments, including headaches, bronchitis, and history of seizures. The ALJ discussed the evidence in the record regarding the functional limitations caused by plaintiff's impairments, including

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript manually filed by the Commissioner as part of the Answer in this action (Item 7).

the objective medical evidence and plaintiff's testimony about his symptoms, and determined that plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, with additional specific exertional limitations (Tr. 19). Based on this RFC assessment, and relying on the VE's testimony, the ALJ found that plaintiff would not be able to return to any of his past relevant work (Tr. 22-23), but given his age, education, work experience, and RFC, would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 23-24). Using Rule 204.00 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"), as a framework for decision-making, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 24).

The ALJ's decision became the final decision of the Commissioner on February 12, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-3), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ improperly assessed the medical evidence in determining plaintiff's RFC, improperly assessed plaintiff's subjective complaints and credibility, failed to consider plaintiff's multiple hospitalizations, and placed undue emphasis on plaintiff's Global Assessment of Functioning ("GAF") scores. *See* Items 12-1, 19. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Items 11-1, 17.

# DISCUSSION

**I.     Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive ...."  42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis.

1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was

substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide

if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the

claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.   The ALJ's Disability Determination

In this case, ALJ Fuller determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since December 18, 2009, the alleged onset date (Tr. 24). At step two, the ALJ determined that plaintiff's depression, adjustment disorder, personality disorder, and substance abuse disorder are "severe" impairments, as that term is defined in the regulations, "because they result in functional limitations or restrictions that have more than a minimal effect on the [plaintiff]'s ability to perform basic work activities" (Tr. 16) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals any impairment in the Listings, specifically considering the criteria of Listings 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders), 12.08 (Personality Disorders), and 12.09 (Substance Addiction Disorders).

The ALJ then found that plaintiff had the RFC for the full range of work at all exertional levels, with the following non-exertional limitations: plaintiff should avoid the concentrated use of moving machinery and concentrated exposure to unprotected heights, he is able to remember and carry out one- to two-step instructions, perform simple, routine, and repetitive tasks, work in a low-stress job (defined as requiring only occasional decision-making and changes in the work setting), and is able to work in an environment free of fast-paced production requirements with only occasional interaction with the public and co-workers (Tr. 19). In making this finding, the ALJ discussed the medical evidence in the record, along with plaintiff's hearing testimony regarding his activities of daily living and the functional limitations caused by the symptoms of his impairments (Tr. 19-22). Based upon her consideration of this evidence, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that his statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Tr. 20).

With regard to the medical evidence, the ALJ discussed plaintiff's history of psychiatric hospitalizations and the report of psychological consultative examiner Shepard Goldberg, Ph.D. This report was afforded great weight because it was based on the examiner's assessment of the plaintiff's mental impairments and generally consistent with the medical evidence of record (Tr. 22). Dr. Goldberg found that plaintiff would be able to understand and follow simple instructions and perform simple tasks, maintain attention and concentration, and maintain a regular schedule (Tr. 22, 244).

Based upon this RFC assessment, and relying on the VE's testimony regarding the exertional requirements of jobs as classified in the U.S. Department of Labor's Dictionary

9

of Occupational Titles ("DOT"), the ALJ determined that plaintiff could not return to any of his past relevant work as a driver or kitchen helper (Tr. 22). At the final step of the sequential evaluation, the ALJ found that there were jobs existing in substantial numbers in the national economy that plaintiff could perform, based primarily on the VE's response to a hypothetical question posed at the hearing regarding whether an individual of plaintiff's age and with similar education, work experience, and RFC could perform the work requirements of those representative occupations (Tr. 48-49). The ALJ then relied on Rule 204.00 of the Grids as a framework for decisionmaking, finding plaintiff "not disabled" within the meaning of the Act at any time during the relevant period (Tr. 23-24).

IV.   **Plaintiff's Motion**

    A.   **RFC**

Plaintiff contends that the Commissioner's determination should be reversed because the ALJ's RFC assessment was not based on substantial evidence. According to plaintiff, the ALJ erred in her consideration of the medical opinion evidence, relying on an equivocal opinion by consultative psychiatric examiner Dr. Shepard Goldberg and ambiguous findings by state agency review psychiatrist H. Tzetzo.

"Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). It is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling 96–8p, 1996 WL 374184, *2 (S.S.A. 1996). In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental,

sensory and other requirements of work." *Domm v. Colvin*, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545(a)(3)-(4)), *aff'd,* 579 F. App'x 27 (2d Cir. 2014). The RFC determination "must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see also Hamlin v. Colvin*, 2014 WL 4669244, at *6 (N.D.N.Y. Sept. 18, 2014).

In this case, ALJ Fuller found that plaintiff had the RFC for the full range of work at all exertional levels, with the following non-exertional limitations: he should avoid the concentrated use of moving machinery and concentrated exposure to unprotected heights, he is able to remember and carry out one- to two-step instructions, perform simple, routine, and repetitive tasks, work in a low-stress job (defined as requiring only occasional decision-making and changes in the work setting), and is able to work in an environment free of fast-paced production requirements with only occasional interaction with the public and co-workers (Tr. 19). In determining the RFC, the ALJ afforded great weight to the opinions of the consultative examiner and the state agency review psychiatrist.

At the consultative examination on May 6, 2010, Dr. Goldberg found plaintiff to be coherent and goal-directed. His affect was appropriate and his mood was neutral. Plaintiff's attention and concentration were intact, as were his recent and remote memory skills. Plaintiff's cognitive functioning was average and his insight and judgment were fair (Tr. 243). Dr. Goldberg found that plaintiff "should be able to follow and understand simple directions and perform simple tasks" and could maintain attention, concentration, and a regular schedule (Tr. 244). Dr. Goldberg opined that plaintiff was "somewhat unsure of himself" since he had entered a mental health treatment program just three months earlier.

11

*Id.* Dr. Goldberg stated that, due to the recent onset of treatment and three previous suicide attempts, plaintiff would be mild to moderately limited in his ability to learn anything new, perform complex tasks independently, make appropriate decisions, relate adequately, or deal with stress, but that "a greater amount of time in treatment would make these tasks more possible for him." *Id.* Dr. Goldberg's prognosis was guarded, given the relatively short time in treatment, and he recommended that plaintiff continue with psychological and psychiatric treatment as currently provided (Tr. 244-45).

Although plaintiff argues that Dr. Goldberg's findings were equivocal, the consultative examiner unequivocally found that plaintiff was able to perform work-related activities and that further treatment would enable him to perform more complex tasks. The opinion of a consultative examiner can constitute substantial evidence in support of an ALJ's RFC determination. *See Diaz v. Shalala,* 59 F.3d 307, 315 (2d Cir. 1995); *Mongeur v. Heckler,* 722 F.2d 1033, 1039 (2d Cir. 1983). The ALJ also explained that Dr. Shepard's opinion was generally consistent with the other medical evidence of record (Tr. 22).

The court also finds that the ALJ's evaluation of the relative weight to be accorded to the state agency psychiatric consultant's opinion was proper. In the Psychiatric Review Technique ("PRT"), Dr. Tzetzo found only mild limitations in the plaintiff's activities of daily living and ability to maintain concentration, persistence, and pace, and moderate limitations in his ability to maintain social functioning (Tr. 266). Dr. Tzetzo restated the findings of Dr. Goldberg's consultative examination and opined that plaintiff "may perform well in a minimal public contact environment." (Tr. 268). In the "Summary Conclusions" portion of the Mental Residual Functional Capacity Assessment ("MRFCA"), Dr. Tzetzo found that plaintiff was not significantly limited in many of the work-related skills, but moderately

limited with regard to understanding, remembering, and carrying out detailed instructions, maintaining attention and concentration for extended periods, sustaining an ordinary routine without special supervision, completing a normal workday and work week without interruptions, interacting with the public, responding appropriately to criticism, adhering to basic standards of neatness, responding appropriately to changes in the work environment, and setting realistic goals (Tr. 270-71). Dr. Tzetzo referred to the PRT in assessing plaintiff's mental RFC. Likewise, in the PRT, Dr. Tzetzo referred to the MRFCA (Tr. 268).

Plaintiff argues that Dr. Tzetzo intended to incorporate all the limitations in the "Summary Conclusions" of the MRFCA into his opinion, and that the ALJ erred by not including every limitation in her own RFC determination. However, there is nothing in the commissioner's regulations or rulings that requires an ALJ to make findings concerning each of the limitations listed on the "Summary Conclusions" portion of the MRFCA form utilized by the state agency review consultant in assessing a claimant's mental residual functional capacity. *Graves v. Astrue,* 2012 WL 4754740, *11 (W.D.N.Y October 4, 2012); *Huber v. Astrue*, 2008 WL 4694753, at *7 (N.D.Tex. Oct. 22, 2008); 20 C.F.R. §§ 404.1513(c), 416.913(c); SSR 96–6p. The "Summary Conclusions" reported by the state agency review consultants in the mental RFC assessment form are chiefly intended to serve as a "worksheet" for the reviewer's use, and "[i]t is the narrative written by the psychiatrist or psychologist in section III ("Functional Capacity Assessment') of [the form] that adjudicators are to use as the assessment of RFC." Social Security Administration, Program Operations Manual System § DI 25020.010, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010. Moreover, here, the ALJ's RFC assessment is consistent with the limitations expressed in both the consultative examiner's

report, the PRT, and the MRFCA. Plaintiff is limited to simple, routine, and repetitive tasks, in a low-stress job, with only occasional decision-making and changes in the work setting, and an environment free of fast-paced production requirements and only occasional interaction with the public and co-workers (Tr. 19).

Based on the court's review, and upon consideration of the record as a whole, the court finds that the ALJ's RFC assessment was accomplished in accordance with the requirements of the regulations, administrative rulings, and case law in a manner sufficient to allow plaintiff and the court to follow her reasoning, and is supported by substantial evidence. Accordingly, plaintiff is not entitled to reversal or remand on the ground that the RFC assessment is not based on substantial evidence.

### B. Credibility

Plaintiff also contends that the ALJ failed to properly assess his credibility with regard to his subjective complaints. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999)). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical

14

evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. §§ 404.1529, 416.929.

The Regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the symptoms; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of his symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3)(i)–(vii); *see Meadors v. Astrue*, 370 F. App'x 179, 184 n. 1 (2d Cir. 2010). The Commissioner's policy interpretation ruling on this process provides the following further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the court's review of the ALJ's determination in light of the record as a whole reveals that the ALJ's credibility assessment was performed in accordance with

15

this guidance. As already discussed, the ALJ conducted a thorough examination of the treatment notes and other medical reports in the record, finding little support for plaintiff's complaints of completely disabling psychological problems. The ALJ noted that, upon discharge after psychiatric hospitalizations, plaintiff was generally assigned a Global Assessment of Functioning ("GAF") score of 51-60 indicating moderate difficulty in social or occupational functioning and was given a score of 65 upon discharge on January 20, 2010 (Tr. 20-21, 205, 209, 307, 311).[2] The ALJ also noted plaintiff's testimony regarding his activities of daily living, including his participation in group therapy, ability to cook his own meals (although he often eats at a soup kitchen), and enjoyment of talk radio. Significantly, the ALJ noted that, when hospitalized in April 2011, plaintiff was found to be malingering (Tr. 21, 307).[3] The medical records indicate that plaintiff "was using [the Erie County Medical Center] inpatient unit to avoid court proceedings." (Tr. 305). Based on this assessment, the ALJ determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not credible (Tr. 20).

In the court's view, this finding is sufficiently grounded in the evidence and specific enough to make clear to plaintiff, to this court, and to any subsequent reviewers the weight

---

[2] GAF is a scale from 0 to 100 that may be used to report the clinician's judgment of the individual's overall symptom severity and the level of his or her functioning. A GAF score of 51–60 indicates a person with moderate symptoms or moderate difficulty in social, occupational, or school functioning. A score of 65 indicates mild symptoms. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM") IV–TR, at 34 (4th ed., rev. 2000).

[3] In his Reply Memorandum (Item 19), plaintiff asserts that he was never diagnosed as a malingerer, suggesting that the ALJ erred in so concluding. Upon admission to the Erie County Medical Center ("ECMC") on April 13, 2011, Dr. Warren Calvert, M.D. noted the following diagnoses: adjustment disorder, malingering, and antisocial personality traits (Tr. 307). Dr. Calvert stated that plaintiff "may be under the impression that he faces arrest. He may actually have a court appearance unrelated to any warrant and is trying to avoid this." Id.

the ALJ gave to plaintiff's statements about the limiting effects of his symptoms, and the reasons for that weight.  As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of the Social Security Act, its implementing regulations, and the weight of controlling authority.  Accordingly, plaintiff is not entitled to reversal or remand on this ground.

### C. Consideration of Other Evidence

Finally, plaintiff contends that the ALJ erred in his consideration of two specific pieces of evidence. First, plaintiff argues that the ALJ improperly overlooked the fact that plaintiff was hospitalized five times from December 9, 2009 through March 25, 2011 as a result of his psychiatric condition.  This, he argues, is indicative of his inability to maintain employment.  Second, plaintiff contends that the ALJ placed undue emphasis on plaintiff's GAF scores.

The record reflects that plaintiff was admitted to the Erie County Medical Center ("ECMC") in December 2009, January, February and October 2010, and March and April 2011.  Upon review of the ALJ's decision, it is apparent that the ALJ properly considered plaintiff's multiple hospitalizations.  The medical evidence indicates that plaintiff was repeatedly admitted to ECMC following suicide attempts or gestures, typically related to the abuse of prescription drugs and alcohol.  The record is replete with examples of plaintiff's manipulative behavior and indications that his suicidal gestures were attempts to gain sympathy and avoid legal consequences.  (Tr. 202, 207, 283, 307, 310, 316, 318). As stated above, the ALJ properly considered plaintiff's malingering in assessing his

17

credibility. Likewise, the ALJ assessed the significance of plaintiff's multiple hospitalizations and found that such hospitalizations did not support plaintiff's allegations of total disability. While the ALJ may have drawn a contrary inference, she was not compelled to.

Similarly, plaintiff's GAF scores, which generally indicated moderate symptoms, were properly considered by the ALJ and were relevant to the RFC determination. There is no indication that the ALJ improperly equated plaintiff's GAF scores with a specific mental RFC. Rather, plaintiff's moderate symptoms were incorporated in to the RFC which limited plaintiff to simple, routine, and repetitive tasks in a low stress environment free of fast-paced production requirements and with no more than occasional contact with the public and coworkers. Accordingly, the court finds tat the ALJ properly considered all the evidence of record in assessing plaintiff's eligibility for benefits.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld. Accordingly, plaintiff's motion for judgment on the pleadings (Item 12) is denied, the government's motion for judgment on the pleadings (Item 11) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

_____\s\ John T. Curtin____
JOHN T. CURTIN
United States District Judge

Dated: September 1, 2015
p:\pending\2013\13-347.ssi.ssdi.aug13.2015